LESTER UNDERWOOD

*v.*

GEORGE H. WEST.

FRAUD — *when equity will relieve against, by rescinding the contract.* Where A and B agreed to exchange real estate, and A so conducted himself as to induce B to believe, that he was acquiring the title to the whole number of lots contained in a certain inclosure, with the exception of one only, and A, after he had received B's deed for the lands proposed to be exchanged by

him, refused to convey the whole number of lots so pointed out by B, and contained within the inclosure, but tendered a deed for part of the property, leaving out two of the lots, — *held*, that in so acting, A perpetrated a fraud upon B, which a court of equity will relieve against by rescinding the contract.

APPEAL from the Circuit Court of La Salle county; the Hon. SIDNEY W. HARRIS, Judge, presiding.

This was a bill filed in chancery, by the appellant, in the county of De Kalb, against the appellee, to set aside a conveyance of certain lands in De Kalb county, which had been made by appellant to appellee, under and by virtue of an agreement made between them to exchange property. By agreement, a change of venue was taken to the Circuit Court for La Salle county, where, on the hearing of the case, the court entered a decree dismissing the bill, whereupon the complainant appealed to this court. The further facts in the case are fully stated in the opinion of the court.

Mr. D. P. JONES, for the appellant.

Mr. J. O. GLOVER, for the appellee.

Mr. CHIEF JUSTICE WALKER delivered the opinion of the Court:

It appears from the record, that appellant and appellee, in 1859, agreed to exchange real estate. Appellee claimed to be the owner of an undivided half of the property known as the Fox river house, in the city of Ottawa, which he agreed to convey to appellant, for which the latter was to convey to the former eighty acres of land in De Kalb county and pay him some cattle, as the difference in the value of the property. Appellant executed a deed for the land, and placed it in the hands of Arthur Lockwood, to be delivered to appellee when he should deliver to him a conveyance of the city property. Afterward appellee executed a deed, conveying the undivided half of seven lots in block sixteen, which he delivered to Lockwood, who thereupon delivered appellant's deed for the land.

Afterward, upon learning the contents of the deed, appellant insisted, that two lots had been omitted, and refused to receive the deed, and subsequently filed this bill to set aside this conveyance. Appellee insists, that he has fully performed his part of the agreement, by conveying to appellant all the lots embraced in the agreement, and insists upon the contract as it was executed.

The evidence seems to be rather inconclusive, as to what were the precise terms of the contract between the parties. It is, however, almost certain, that appellant understood he was obtaining title to the undivided half of lots six and ten, in addition to the others, and he objected and refused to receive the deed when informed by Lockwood, that those lots were not embraced in it.

It seems, that, while negotiations were progressing for the trade, appellant went with appellee and saw the property.. At that time he was only informed, that one lot in the inclosure was not included in the interest of appellee in the property,. which he was offering to sell to appellant. He was then informed, that the north-east corner lot belonged to the estate of Haywood. It also appears, that lots six and ten were in the · inclosure. Under these circumstances it was natural for him : to conclude, that all of the property inclosed and used with the · house belonged to, and formed a part of the premises being; sold. Appellee was offering to sell his interest in the Fox · river house property, and being shown the house and inclosure,. and only informed that one lot therein did not belong to him,. appellant had the right to suppose, and must have supposed, that he would obtain the title to the undivided half of all but the lot which was then excluded. There is no evidence to show, or from which it can be inferred, that he had any means of knowing that appellee intended to exclude lots six and ten from the operation of the agreement. Lot ten was inclosed with, and adjoining the house, and had on it two cisterns, supplied with water from the roof of the house, and used for, and in connection with, the property. There is nothing more natural than that he would believe, under these circumstances,

that he was obtaining this lot as much as either of the others. And lot six being inclosed with the lots conveyed and used with, and as a part of, the Fox river house property, and not being pointed out, or otherwise excluded from the sale, he must have supposed it was embraced in the agreement.

If, however, appellee did not intend to sell his interest in these two lots, and did no act to encourage the mistake, then appellant would have no ground of complaint, as it would be his misfortune, and not appellee's fault. But if the latter induced the erroneous belief by appellant, that he was obtaining all of the lots embraced in the inclosure but the lot in the north-east corner, and did no act to undeceive him, then he should be required to execute the contract as appellant was induced to understand it. We think the evidence proves, that appellee designed to mislead appellant in the belief, that he was acquiring title to lots six and ten with the others. He had proposed to sell him his interest in the Fox river house property, took him to the premises, showed it to him, and only informed him, that he was not the owner of one lot in the inclosure embracing the house. If he did not intend to sell the two lots he should have so informed him. It would be, to say the least of it, bad faith to permit appellee to afterward say, that these lots were not intended to be included in the exchange.

That appellant understood he was acquiring appellee's interest in these lots, appears from the fact, that Lockwood, who was employed to write the deed from appellee to appellant, understood they were embraced in the trade, and so prepared the deed, but they were stricken out at the instance of appellee before he executed it. Lockwood gives it as his impression, that he obtained the description of the property from conveyances to appellee, which were furnished him by the son of appellee. He also states, that he delivered the deed for the land to appellee, before appellant was informed of the contents of the deed conveying the lots, and that appellant was not satisfied with the delivery of his deed when he learned it, claiming that he had not received title to a sufficient number of lots. He states, that he was not present when the contract was

entered into, and did not hear the agreement between the parties.

McNeal testifies, that he heard a conversation between the parties after the trade had been made, in which appellee stated that he sold all of the lots in the inclosure but one. That he had sold the lot on which the two cisterns were situated. This witness says he went to hear the conversation, and he must be presumed to have understood what was said by the parties in reference to what was admitted to have been sold, as that was the question in dispute. Prentice, who was present a portion of the time the parties were trading, says that he does not remember, precisely, what was said, more than appellant was purchasing appellee's interest in the property, and that appellant inquired whether appellee's interest in the property was the same as that of witness, and appellee informed him that it was. It appears that this witness, at that time, held an interest in the two lots about which this controversy has arisen, and the evidence shows, that appellee claimed the same interest in these lots as was held by Prentice.

It is true, that this witness thinks something was said about appellee's interest in the property being that which was purchased by him from Delano. He is not certain, but says, in the conversation, in reference to making a quitclaim deed for the property, it was to be for what Beauprie purchased of Delano, or which appellee had purchased of Beauprie, but is uncertain which. This witness states, that appellee claimed to have obtained his title to all of the lots, including six and ten, from Beauprie.

It also appears, that, previous to the sale from appellee to appellant, Beauprie had sold to appellee an undivided half of the lots embraced in this deed, as well as lots six and ten. And, prior to that time, Delano had conveyed lots six and ten to Beauprie. It also appears, that, before this sale was made, appellee and Prentice had conveyed six and ten to Levins, so that he was unable to convey these lots to appellant. An attentive consideration of the evidence satisfies us that appellant believed, at the time, that he was purchasing all the lots,

as he claims, and that appellee so acted as to induce that belief. That in doing so he perpetrated a fraud upon appellant, which authorized him to insist upon a rescission of the contract. The court below, therefore, erred in dismissing appellant's bill, and the decree is reversed and the cause remanded.

*Decree reversed.*